1
2
3
4
5
6
7

8          # UNITED STATES DISTRICT COURT

9          ## EASTERN DISTRICT OF CALIFORNIA

10

11   BASKIN ROBBINS FRANCHISING LLC, a )          1:10-cv-01535 AWI GSA
     Delaware limited liability company; and BR )
11   IP HOLDER LLC, a Delaware limited )          **FINDINGS AND RECOMMENDATIONS**
12   liability company, )                         **REGARDING PLAINTIFFS' MOTION**
                                              )   **FOR DEFAULT JUDGMENT AGAINST**
13            Plaintiffs, )                       **DEFENDANTS BARDALE, INC., JIM R.**
                                              )   **DALE AND ERIN C. DALE**
14      v. )
                                              )   (Document 13)
15   BARDALE, INC., a California corporation; )
     JIM R. DALE, an individual; and ERIN C. )
16   DALE, an individual, )
                                              )
17            Defendants. )
     _____ )

18

19

20          On November 17, 2010, Plaintiffs Baskin Robbins Franchising LLC and BR IP Holder

21   LLC ("Plaintiffs") filed the present Motion for Default Judgment Against Defendants Bardale,

22   Inc., Jim R. Dale and Erin C. Dale.  Defendants were served via overnight mail.  (Doc. 13.)  No

23   opposition was filed on behalf of Defendants.  The hearing scheduled for December 17, 2010,

24   was vacated and the matter was taken under submission pursuant to Local Rule 230(g). (Doc.

25   15.)

26
27
28                                              1

**PROCEDURAL BACKGROUND**

Plaintiffs filed the instant action on August 25, 2010.  (Doc. 1.)  Defendant Bardale, Inc. was served with the summons and complaint on September 16, 2010.  (Doc. 6.)  Defendants Jim R. Dale and Erin C. Dale were served with the summons and complaint on September 23, 2010. (Docs. 8-9.)  The complaint for an injunction and damages includes claims for trademark infringement, trademark dilution, false designation of origin and false description, breach of contract (franchise agreement), breach of written guaranty, unfair competition, and misappropriation of trade secrets.   (Doc. 1, ¶¶ 25-79.)  Plaintiffs' prayer for relief includes, *inter alia*, an order declaring the franchise agreement between it and Defendants terminated, that Defendants infringed Baskin Robbins' trade names, service marks and trademarks, and that Defendants be permanently enjoined regarding the use of Plaintiffs' trade names, service marks, trade dress, trademarks, property, et cetera.  (Doc. 1 at 23-25.)

Defendants have not answered the complaint or otherwise appeared in this action.  On November 9, 2010, the Clerk of the Court entered default against all Defendants.  (Doc. 11.)

Plaintiffs filed the instant motion for default judgment on November 17, 2010.  Plaintiffs request that the Court enter default judgment against Defendants in the amount of $37,325.74. Plaintiffs further request that the Court enter a permanent injunction against Defendants prohibiting further infringement of Plaintiffs' trademarks.  (Doc. 13.)

Despite being served with the Plaintiffs' motion by overnight delivery via Overnite Express at their last known address in Riverbank, California, Defendants have not responded to the motion or otherwise appeared in this action. (Doc. 13-5 at 1-3.)

**FACTUAL BACKGROUND**

On March 24, 2008, the parties entered into a franchise agreement by wherein Plaintiff Baskin-Robbins Franchising LLC granted a franchise to Defendant Bardale, Inc. to operate a Baskin-Robbins restaurant at 2221 McHenry Avenue in Modesto, California.  (Doc. 13 at 3-4 & Doc. 1, Ex. A.)  Defendants Jim R. Dale and Erin C. Dale executed a personal guaranty as to the

franchise agreement.  (Doc. 1, Ex. A.)  Among the terms of the agreement were the following

requirements: (1) that Defendant Bardale, Inc. pay Plaintiff Baskin-Robbins Franchising LLC

weekly franchising fees and weekly contributions to the national advertising fund, (2) that it

provide weekly statements regarding its gross sales, (3) that it make all payments pursuant to the

agreement and pay interest for any unpaid amounts, (4) that a failure to pay service fees was a

material breach of the agreement; and (5) that termination of the agreement would result in

Defendant Bardale, Inc. owing Plaintiff Baskin-Robbins Franchising LLC damages, costs and

expenses, including reasonable attorneys' fees.  (Doc. 13 at 4 & Doc. 1, Ex. A.)  The agreement

required that upon termination Defendant Bardale, Inc. was to cease operating the restaurant,

cease use of all Baskin-Robbins advertising and operating materials, and otherwise return all

Baskin-Robbins property.  (Doc. 13 at 5-7 & Doc. 1, Ex. A.)

On July 19, 2010, Plaintiff Baskin-Robbins sent a Notice to Cure to Defendants advising

that Defendant Bardale, Inc.'s failure to pay amounts due pursuant to the franchise agreement

required cure within fifteen days.  Defendants received the notice on July 21, 2010.  (Doc. 13 at 9

& Doc. 1, Exs. B-C.)

On August 11, 2010, Plaintiff Baskin–Robbins sent a Notice of Termination to Bardale,

Inc., based upon its failure to cure the defaults identified in its earlier Notice to Cure.  The

termination was effective immediately upon receipt.  (Doc. 13 at 9 & Doc. 1, Ex. D.)  The

certified mail return-receipt was dated August 19, 2010, and signed by J. Dale.  (Doc. 13 at 9-10

& Doc. 1, Ex. E.)

**DISCUSSION**

***Service of Process***

Service of summons and complaint in this action was made on Defendant Bardale, Inc. on

September 16, 2010.  Defendants Jim R. Dale and Erin C. Dale were served with the summons

and complaint on September 23, 2010.  True and correct copies of the Proofs of Service were

filed with this Court on October 5, 2010, and November 2, 2010, respectively. (Docs. 6 & 8-9).

1  Defendants failed to respond to the complaint or otherwise appear in this action.  The Clerk of

2  the Court entered default against all Defendants on November 9, 2010.  (Doc. 11.)  Defendants

3  are not infants or incompetent persons, and are not in the military service or otherwise exempted

4  under the Soldiers' and Sailors' Civil Relief Act of 1940.  (*See* Doc. 13-2, at ¶ 6.)

5  ***Plaintiffs' Claims***

6  Plaintiffs contend they are entitled to a judgment against Defendants on each of the

7  claims alleged in their complaint.  (Doc. 13 at 2.)  Plaintiffs claim federal trademark infringement

8  (15 U.S.C. § 1114(1)), federal trademark dilution (15 U.S.C. § 1125(c)), false designation of

9  origin and false description (15 U.S.C. § 1125(a)), breach of contract, breach of written guaranty,

10  and state and common law claims of unfair competition (Cal. Bus. & Prof. Code, § 17200 *et*

11  *seq*.), trademark infringement and unfair competition, trademark dilution (Cal. Bus. & Prof.

12  Code, § 14330), and, misappropriation of trade secrets (Cal. Civ. Code, § 3426 *et seq*.).  (Doc. 1

13  at 13-23, ¶¶ 25- 79.)

14  ***Legal Standard***

15  Rule 55(b)(2) of the Federal Rules of Civil Procedure provides that judgment may be

16  entered:

17  By the Court.  In all other cases, the party must apply to the court for a
default judgment.  A default judgment may be entered against a minor or

18  competent person only if represented by a general guardian, conservator, or other
like fiduciary who has appeared.  If the party against whom a default judgment is

19  sought has appeared personally or by a representative, that party or its
representative must be served with written notice of the application at least 3 days

20  before the hearing.  The court may conduct hearings or make referrals--preserving
any federal statutory right to a jury trial--when, to enter or effectuate judgment, it

21  needs to:

22  (A) conduct an accounting;
(B) determine the amount of damages;

23  (C) establish the truth of any allegation by evidence; or
(D) investigate any other matter.

24  "Upon default, the well-pleaded allegations of the complaint relating to liability are taken as

25  true." *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d 1319, 1323 (7th

26  Cir. 1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

27

28  4

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

### Eitel Analysis

#### Possibility of Prejudice to Plaintiffs

Plaintiffs' complaint established that Defendants have breached numerous obligations related to the franchise agreement between the parties. Defendants have not answered the complaint or otherwise appeared in this action. "If Plaintiffs' motion for default judgment is not granted, Plaintiffs will likely be without other recourse for recovery." *PepsiCo, Inc. v. Cal. Security Cans*, 238 F.Supp.2d 1172, 1177 (C.D. Cal. 2002). This factor weighs in favor of Plaintiffs.

#### Merits of Plaintiffs' Substantive Claims & Sufficiency of the Complaint

The second and third *Eitel* factors weigh the substantive merit of Plaintiffs' claims and the sufficiency of the pleadings to support the claims. Plaintiffs must state a claim upon which they may recover in order to prevail on these factors. *PepsiCo, Inc. v. Cal. Security Cans*, 238 F.Supp.2d at 1177. The Court has thoroughly reviewed the complaint filed August 25, 2010, as well as the exhibits and affidavits appended to both the request for entry of default and the instant motion (Docs. 1, 10 & 13) and finds Plaintiffs have stated claims upon which they may recover. For example, to prevail on a claim for trademark infringement, a holder of a registered service mark must show that another person is using: (1) any reproduction, counterfeit, copy or colorable imitation of a mark; (2) without the registrant's consent; (3) in commerce; (4) in connection with the sale, offering for sale, distribution or advertising of any goods; (5) where such use is likely to

5

cause confusion, or to cause a mistake or to deceive.  15 U.S.C. § 1114(1)(a); *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1988). Neither intent nor actual confusion are necessary to establish a likelihood of confusion.  *Id*.  The critical determination is, "whether an alleged trademark infringer's use of a mark creates a likelihood that the consuming public will be confused as to who made that product." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (quoting *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 908 (9th Cir. 2003), internal quotation marks omitted).

Here, Plaintiffs have alleged that they are the respective owners of BASKIN-ROBBINS, BASKIN 31 (IN ARC) ROBBINS, 31, 31 In a Circle Design, 31 In an Arc Design, 31 Flavors trademark, and 31 Baskin Robbins Marks that are registered with the United States Patent and Trademark Office.  (Doc. 1 at 4; Doc. 13 at 2; 13-1, ¶ 1.)  Trademark registrations in support of their assertion have been provided.  (Doc. 1-5.)  Plaintiffs have also alleged that Defendants have used the Baskin-Robbins Marks and Baskin-Robbins property "without having any right or license to do so" (Doc. 13 at 10) and "without the consent of Baskin-Robbins after termination of the Franchise Agreement" and that the "unauthorized use by Defendants of the Baskin-Robbins Marks . . . is likely to cause confusion and mistake in the minds of the purchasing public . . .." (Doc. 1, ¶ 28.)  It appears that Plaintiffs' marks have been infringed upon by Defendants. *See also E & J Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288, n.2 (9th Cir. 1992) ("the facts which will support a suit for infringement of a trademark under Section 1114 and one for unfair competition under Section 1125(a) are substantially the same").

The Court finds the well-pleaded allegations of the complaint state claims upon which relief can be granted.  *Anderson v. Air West*, 542 F.2d 1090, 1093 (9th Cir. 1976).  The memorandum of points and authorities and affidavits filed in support of the motion for default judgment also support the finding that Plaintiffs are entitled to the relief requested.

//

//

6

*The Sum of Money at Stake*

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of the Defendants' conduct.  *See PepsiCo, Inc. v. Cal. Security Cans,* 238 F.Supp.2d at 1176.  Here, Plaintiffs seek to recover $29,002.89 from Defendants in estimated advertising and franchise fees, apart from the attorneys fees and costs that are addressed below.  The estimates are based upon prior reported sales from Defendants' restaurant as Defendants have failed to report all actual sales figures as required.  (Doc. 13 at 10 & Doc. 13-1, ¶ 2.)  This Court finds that Plaintiffs' request is reasonable.

*Possibility of Dispute Concerning Material Facts*

There is no evidence that any material facts are disputed, and thus this factor favors Plaintiffs' motion for default judgment.  *See Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977); *PepsiCo, Inc. v. Cal. Security Cans*, 238 F.Supp.2d at 1177.

*Excusable Neglect*

There is no evidence that the defaults were the result of excusable neglect on the part of Bardale, Inc., Jim R. Dale or Erin C. Dale.  All Defendants were properly served with the summons and complaint, as well as the Plaintiffs' motion for default judgment.  No party has appeared or opposed Plaintiffs' motion.  This factor favors default.

*Strong Policy Favoring Merits Determination*

"Cases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d at 1472.  However, this Court finds the preference for decisions on the merits does not outweigh Plaintiffs' entitlement to relief.  Where Defendants fail "to answer Plaintiffs' Complaint[, it] makes a decision on the merits impractical, if not impossible.  Under Fed. R. Civ. P. 55(a), termination of a case before hearing the merits is allowed whenever a defendant fails to defend an action." *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d at 1177.  Thus, this factor also favors default.

*Relief Sought*

**Damages re Franchise Agreement**

Plaintiffs seek to recover the sum of $29,002.89 pursuant to the franchise agreement. (Doc. 13.)  "A default judgment may be entered without a hearing on damages when the amount claimed is capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits." *Taylor Made Golf Co., Inc. v. Carsten Sports, Ltd.*, 175 F.R.D. 658, 661 (S.D. Cal. 1997), citing *Dundee Cement Co. v. Howard Pipe & Concrete Products, Inc.*, 722 F.2d at 1323.

Here, Plaintiffs have provided figures regarding Defendants' previous weekly reports and sales figures for the period between October 2009 and June 2010 to arrive at an estimate for its damages following Defendants' failure to cure and termination of the franchise agreement.  (Doc. 13-1, ¶ 2 & Ex. A.)  More specifically, as Plaintiffs stated, because Defendants "failed to submit all the statements of gross sales upon which the franchise and advertising fees due to Baskin-Robbins are based[,] Baskin-Robbins estimates, based on prior reported sales data from Defendants' restaurant, that as of November 2, 2010, Defendants owed Baskin-Robbins $29,002.89 in estimated advertising and franchise fees."  (Doc. 13-1, ¶ 2.)

This Court finds the amount Plaintiffs seek is reasonable and supported by definite figures contained in supporting affidavits.

**Injunctive Relief**

The Lanham Act provides for injunctive relief to prevent trademark infringement.  15 U.S.C. § 1116(a).  "Injunctive relief is the remedy of choice for trademark and unfair competition cases, since there is no adequate remedy at law for the injury caused by a defendant's continuing infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d at 1180.  Where a plaintiff proves a claim of trademark infringement, the court may order the destruction of materials bearing an infringing mark.  15 U.S.C. § 1118.  District court should apply "traditional equitable

principles" in deciding whether to grant permanent injunctive relief.  *Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006), internal citations omitted.

In the complaint, Plaintiffs alleged Defendants "continued to operate the restaurant as a Baskin-Robbins restaurant, using the Baskin-Robbins Marks and using Baskin-Robbins property" after termination of the franchise agreement.  (Doc. 1, ¶ 23.)  Plaintiffs stated in its points and authorities to the motion that despite failing to perform under the franchise agreement and the termination of that agreement, "Defendants continued to operate their restaurant[] as [a] Baskin-Robbins restaurant[], using the Baskin-Robbins Marks and using Baskin-Robbins property without having any right or license to do so . . .."  (Doc. 13 at 10.)  However, in a separate declaration prepared by Gary Zullig, Collection Specialist at Dunkin Brands, Inc., the parent company of Plaintiffs' firms, Mr. Zullig declared that "as of the date of this Declaration, Defendants [] are no longer operating the Baskin-Robbins store located at 2221 M[c]Henry Avenue, Modesto, California."  (Doc. 13-1, ¶ 4.)

Generally speaking, Plaintiffs seek to permanently enjoin Defendants from holding themselves out as a present or former franchisee of Baskin-Robbins, from using or disclosing any feature or method associated with Baskin-Robbins Marks, from possessing its operating manuals, plans, specifications, and from displaying or using any signs, trade fixtures or Baskin-Robbins Marks.  (Doc. 13-4.)

In order to obtain injunctive relief, a plaintiff must show either (1) probable success on the merits and the possibility of irreparable harm, or (2) the existence of serious questions on the merits and the balance tips in its favor.  *Vision Sports, Inc. v. Melville Corp.,* 888 F.2d 609, 612 (8th Cir. 1989).  In an action for trademark infringement, "once the plaintiff establishes a likelihood of confusion, it is ordinarily presume that the plaintiff will suffer irreparable harm if injunctive relief is not granted."  *Id.*

Here, Plaintiffs have established the likelihood of confusion, and therefore, it is presumed Plaintiffs will suffer irreparable harm in the absence of injunctive relief.  This Court recommends

the [Proposed] Permanent Injunction Order prepared by Plaintiffs and docketed November 17, 2010, be adopted in full.

**Attorneys Fees & Costs**

Plaintiffs seek a total of $8,322.85 in attorneys fees and costs pursuant to the franchise agreement. (*See* Doc. 1, Ex. A, ¶ 9.3 & Doc. 13 at 13-14.) That section of the franchise agreement between the parties provides as follows:

> If FRANCHISEE fails to cure a default within any applicable time period following notice set forth in subsection 9.1, or if this Agreement is terminated as a result of FRANCHISEE's default, FRANCHISEE shall pay to FRANCHISOR all damages, costs and expenses, including without limitation, late fees, collection fees, interest at one and one-half percent (1.5%) per month, or the highest permissible rate, and reasonable interest, damages, costs and expenses may be included in and form part of the judgment awarded to FRANCHISOR in any proceedings brought by FRANCHISOR against FRANCHISEE.

In particular, Plaintiffs request the following:

1.   For services rendered through August 31, 2010, a total of $2,941.70 (Doc. 13-2, Ex. A at 4& 13-1, Ex. A at 12) ;

2.   For services rendered through September 30, 2010, a total of $1,591.50 (Doc. 13-2, Ex. B at 6);

3.   For services rendered through October 31, 2010, a total of $248.40 (Doc. 13-2, Ex. C); and

4.   For services rendered in preparation of the request for entry of default and default motion, a total of $3,155.00  (Doc. 13-2, ¶ 12).

The Court determines an attorney fee award by calculating the "lodestar figure" which entails taking the number of hours reasonably expended on the litigation and multiplying it by a reasonable hourly rate. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The Ninth Circuit Court of Appeals has outlined factors to consider for the reasonableness of attorney's fees:

> In calculating reasonable attorney fees the court must consider the following factors: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill necessary to perform the legal services properly, (4) the preclusion of other employment by the attorney due to acceptance of the

10

case, (5) the customary fee, (6) time limitations imposed by the client or circumstances, (7) the amount involved and the results obtained, (8) the experience, reputation and ability of the attorneys, (9) the "undesirability" of the case, (10) the nature and length of the professional relations with the client, and (11) awards in similar cases.

*Van Gerwen v. Guarantee Mutual Life Co.* 214 F.3d 1041, 1045 (9th Cir. 2000) (citing *Hensley v. Eckert*, 461 U.S. 424). The lodestar figure is presumptively reasonable and may be adjusted only in rare and exceptional cases that are supported by specific evidence in the record and detailed findings. *Rouse v. Law Offices of Rory Clark,* 603 F.3d 699, 704 (9th Cir. 2010).

This Court has carefully reviewed Plaintiffs' request and accompanying documentation and finds a total award of $6,745.35 in attorneys fees to be reasonable. The total sum requested by Plaintiffs has been reduced by $1,577.50 because despite an assertion that Ms. Gitterman and Ms. Palma spent a total of 10.6 hours on the preparation of the instant motion, no specific information or breakdown regarding a description of the work performed was included or provided for the Court's consideration. Therefore, because the motion is neither complicated nor complex, one-half of Ms. Palma's claimed 8.6 hours shall be credited (4.3 x $275 per hour) and one-half of Ms. Gitterman's claimed 2.0 review hours shall be credited (1.0 x $395 per hour).

## RECOMMENDATIONS

Based on consideration of the declarations, pleadings and exhibits to the present application, the Court RECOMMENDS as follows:

1.      Plaintiffs' application for default judgment be GRANTED;

2.      Judgment be entered in this action against Defendants Bardale, Inc., Jim R. Dale and Erin C. Dale;

3.      Damages in the total amount of $29,002.89 be awarded;

4.      Attorneys fees in the total amount of $6,745.35 be awarded; and

5.      Injunctive relief be granted as requested in the [Proposed] Permanent Injunction Order (Doc. 13-4 [11/17/10]).

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304.  Within fourteen (14)  days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   January 10, 2011**                        **/s/ Gary S. Austin**
                                                              UNITED STATES MAGISTRATE JUDGE